IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| Yasir Salem, | Case No. 4:25-cv-02058-PAB |
|     Petitioner, | |
| -vs- | |
| | JUDGE PAMELA A. BARKER |
| Core Civic Warden, et al., | |
|     Respondents. | MEMORANDUM OPINION & ORDER |

Currently pending before the Court is Petitioner Yasir Salem's ("Salem") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Petition"). (Doc. No. 5.) On December 22, 2025, Respondents filed their Answer to the Petition. (Doc. No. 11.) On January 9, 2026, Salem filed his Traverse. (Doc. No. 12.) For the reasons stated herein, Salem's Petition is denied without prejudice. Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

I.     **Factual Background**

Salem entered the United States as an immigrant in 1994. (Doc. No. 11-1, ¶ 5.)[1] After entering the United States, Salem was convicted of battery, taking a vehicle without the owner's consent, assault with a deadly weapon, and possession of a controlled substance. (*Id.* at ¶ 6–9.) On December 5, 2002, the Immigration and Naturalization Service issued a notice to appear placing Salem in removal proceedings before the Eloy, Arizona Immigration Court. (*Id.* at ¶ 10.) On

---

[1] Respondents submitted the Declaration of Allen Vanscoy with its Answer. Salem does not dispute the averments in Mr. Vanscoy's declaration.

February 5, 2003, an Immigration Judge denied Salem's applications for asylum and withholding of removal and deferral, pursuant to the Convention Against Torture Act, and ordered Salem removed to Jordan and, in the alternative, Israel. (*Id.* at ¶ 12.) Salem appealed that decision, but ultimately his appeal was dismissed. (*Id.* at ¶¶ 12–13.) On February 10, 2004, Salem was released on an Order of Supervision as ICE was unable to secure a travel document for removal at that time. (*Id.* at ¶ 14.)

In the 2020s, Salem was convicted of three more crimes: (1) assault with a deadly weapon, and (2) two separate violations of a protection order. (*Id.* at ¶¶ 15–17.) On March 22, 2025, Salem was arrested for possession of a controlled substance by the Akron Police Department, and that case remains pending. (*Id.* at ¶ 18.) While in jail, on March 26, 2025, Salem was turned over to ICE custody on a detainer and transported to ICE for processing and housing. (*Id.* at ¶ 19.)

On June 3, 2025, ICE requested a travel document for Salem from Israel for the return of Salem to the Palestinian territories. (*Id.* at ¶ 20.) On June 20, 2025, ICE completed a post order custody review, and issued Salem a decision to continue detention, indicating that a significant likelihood of removal in the reasonably foreseeable future exists and finding Salem to be a danger to the community based on his criminal history. (*Id.* at ¶ 21.)

On September 16, 2025, just under six months from when he was detained by ICE, Salem filed his Petition pursuant to 28 U.S.C. § 2241. (Doc. No. 5.) On September 25, 2025, after a panel interview was conducted with Salem, a determination was made to continue Salem's custody. (*Id.* at ¶¶ 22–24.) To date, Salem has not been removed from the United States and is still in custody.

## II.   Procedural Background

On September 16, 2025, Salem filed his Petition. (Doc. No. 5.) On November 21, 2025, the Court, having examined the Petition, could not "determine from its face that Salem is not entitled to

relief." (Doc. No. 9, PageID #20.) On December 22, 2025, Respondents filed their Answer to the Petition. On January 9, 2026, Salem filed his Traverse. (Doc. No. 12.) Accordingly, the Petition is ripe for the Court's review.

### III.  Standard of Review

8 U.S.C. § 1231 governs the procedures for the detention and removal of aliens that are subject to an order of removal. The statute provides as follows:

> Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").

8 U.S.C. § 1231(a)(1)(A). Certain aliens, who have "been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period . . . ." 8 U.S.C. § 1231(a)(6).

The Supreme Court has interpreted this statute to permit the government to detain an alien for periods of time longer than 90 days and has found that six-months is presumptively reasonable. *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). "This 6-month presumption, of course, does not mean that every alien not removed must be released after six months." *Id.* "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* "And for the detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* But "the *Zadvydas* due process analysis applies only if a danger of indefinite detention exists." *Jiang Lu v. United States Dep't of Immigration and Customs Enforcement*, 22 F. Supp. 3d 839, 843 (N.D. Ohio 2014) (citing *Denmore v. Kim*, 538 U.S. 51, 531 (2003) (distinguishing

*Zadvydas* because the petitioner had not demonstrated that there was a real danger of indefinite or permanent detention, and it was therefore premature to apply the due process analysis)).

IV.     Analysis

In his Petition, Salem asserts that ICE has held him "in detention 180 days and deportion (sic) is not hapening (sic) future soon, so continue[d] detention forever is valition (sic) of Constition (sic) of USA." (*Id.* at PageID #4.) He argues that he is from "Plastine (sic) and evry (sic) person in the world knows what hapening (sic) in Plastine (sic) to send me this time to Plastine (sic) is dangrous (sic)." (*Id.* at PageID #8.) He further argues that "ICE and Warden" have held him "(180) days in detention" and that "they try evry (sic) step and evry (sic) tools they have ic (sic) to remove me [from the] USA, and is not hapening (sic) nearest future or soon." (*Id.* at PageID #9.) He claims that he does not "know how [long] it takes" and that he has been in detention since March 26, 2025. (*Id.*) Salem thus asks that Court "to release [him] from ICE C[u]stody." (*Id.* at PageID #10.)

In their Answer, Respondents argue that "[a] review of Salem's Petition shows that Salem filed his petition just short of the six months presumptively reasonable time." (Doc. No. 11, PageID #28.) They assert that "Salem's custody has been periodically reviewed and the decision was made to continue his custody, most recently on September 25, 2025" and that "ICE has requested a travel document from Israel." (*Id.*) Respondents further argue that while Salem asserts that Palestine is dangerous, "he has not alleged, nor has he set forth in credible evidence that there is no significant likelihood of removal in the reasonably foreseeable future." (*Id.*)

In his Traverse, Salem argues that "ICE has been trying to obtain Petitioner's travel documents" and that an "ICE officer informed Petitioner that his travel documents were denied, which was 22 years ago." (Doc. No. 12, PageID #36.) Salem argues that "it has been 22 years since

4

respondent has been trying to deport Petitioner" and "[a]s of today, Petitioner has been detained for over 9 months." (*Id.* at PageID #37.) He asserts that "[i]f respondents have not been able to deport Petitioner for the last 22 years what will change in the reasonably foreseeable future, and the truth is in front of the Court." (*Id.*) In a conclusory manner, Salem asserts that "nothing has changed in the [past] 22 years." (*Id.*)

Upon review of the evidence in the record, the Court finds that Salem has not met his initial burden under *Zadvydas* to set forth good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. In a conclusory manner, Salem asserts that "deportion (sic) is not happening [in the] future soon," (Doc. No. 5, PageID #4) and that he is from "Plastine (sic) and evry (sic) person in the world knows what hapening (sic) in Plastine (sic) to send me this time to Plastine (sic) is dangrous (sic)." (*Id.* at PageID #8.) A petitioner, however, cannot meet his initial burden under *Zadvydas* through "speculation and conjecture." *Smith v. Simon*, No. 1:19 CV 41, 2019 U.S. Dist. LEXIS 148526, at *11 (N.D. Ohio July 17, 2019) (citing cases). While Salem has a point that recent events may make a return to Palestine dangerous, another judge from this district recently denied a petition under *Zadvydas* based on evidence that the government "provided Petitioner's information to the Israeli government and anticipate receiving special transit permission necessary to enter the occupied Palestinian territories." *Hammouda v. Dep't of Homeland Sec.*, No. 4:25-cv-2696, 2026 U.S. Dist. LEXIS 6602, at *14 (N.D. Ohio Jan. 13, 2026); *see also Zakarneh v. United States Immigr. & Customs Enf't*, No. 2:25-cv-00707-DGE, 2026 U.S. Dist. LEXIS 4456, at *11–12 (W.D. Wash. Jan. 9, 2026) (denying relief under *Zadvydas* based on evidence that "the government of Israel has approved Petitioner's removal through Israel to the West Bank so long as a flight can be arranged"). Further, Respondents have submitted unrebutted evidence that ICE has

successfully removed individuals to the Palestinian territories, and there is no reason to believe that ICE will be unable to continue doing so. (Doc. No. 11-1, ¶ 26.)

Moreover, courts have also found that "that mere delay by the foreign government in issuing travel documents, despite reasonable efforts by United States authorities to secure them, does not satisfy a detainee's burden under *Zadvydas* to provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Manjulaben v. ICE*, No. 4:25-cv-02252, 2025 U.S. Dist. LEXIS 207750, at *7 (N.D. Ohio Oct. 22, 2025) (citing cases). Respondents have submitted evidence that "ICE has requested travel documents for Salem from the Israel government for the return of the Petitioner to the Palestinian territories." (*Id.*) Salem has not submitted any contrary evidence. *See Boachie-Danquah v. United States AG*, No. 1:17-cv-641, 2018 U.S. Dist. LEXIS 24197, at *7–8 (S.D. Ohio Jan. 14, 2018) ("In the absence of any evidence in the record to suggest that the Ghanaian Embassy will not issue the requested and expected travel document in the reasonably foreseeable future, the undersigned concludes that petitioner has failed to meet his initial burden of proof under *Zadvyda*s").

For all these reasons, the Court finds that Salem has not demonstrated good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701. If circumstances change, Salem may file a new § 2241 petition setting forth good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future. *See Estenor v. Holder*, No. 1:11-cv-743, 2011 U.S. Dist. LEXIS 133714, at *11 (W.D. Mich. Oct. 24, 2011) (denying petition without prejudice to future relief if circumstances change), *report and recommendation adopted*, 2011 U.S. Dist. LEXIS 132128 (W.D. Mich. Nov. 16, 2011).

**V.    Conclusion**

For the reasons set forth herein, Salem's Petition is denied without prejudice.  Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED.**

|  |  |
|---|---|
|  |  s/Pamela A. Barker |
|  | PAMELA A. BARKER |
| Date:  January 26, 2026 | U. S. DISTRICT JUDGE |